PROSKAUER ROSE LLP
Howard Z. Robbins
Jonathan R. Gartner
11 Times Square
New York, New York 10036
T: (212) 969-3000
F: (212) 969-2900
hrobbins@proskauer.com
jgartner@proskauer.com
Attorneys for Petitioner

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MAJOR LEAGUE SOCCER, L.L.C.,                 :
                                             :
                          *Petitioner*,      :
                                             :        Case No. _____
        - against -                          :
                                             :
MAJOR LEAGUE SOCCER PLAYERS                  :
ASSOCIATION on behalf of ALEJANDRO           :
ROMERO GAMARRA (a/k/a "KAKU"),               :
                                             :
                          *Respondent.*      :
-------------------------------------------------------------X

## PETITION TO CONFIRM ARBITRATION AWARD

Petitioner, Major League Soccer, L.L.C. ("MLS"), seeks confirmation of an arbitration

award for breach of the Standard Player Agreement ("SPA") of Alejandro Romero Gamarra (a/k/a

"Kaku"), as incorporated into the Collective Bargaining Agreement ("CBA") between MLS and

Respondent, Major League Soccer Players Association (the "Respondent" or the "Union"), and

enforcement in conformity therewith.

## SUMMARY OF PETITION

This is a petition filed pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-13,

to confirm and enforce an arbitration award issued on April 2, 2021, in accordance with the CBA

(including the SPA), which is subject to the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185.

## PARTIES AND JURISDICTION

1.      Petitioner, MLS, a professional soccer league, is a Delaware limited liability company, with a principal place of business in New York City and is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2).

2.      Respondent, the Union, maintains its principal place of business in Washington, D.C.  The Union is a labor organization representing employees in this judicial district in an industry affecting commerce within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5).

3.      The arbitration award that is the subject of these proceedings for confirmation and enforcement arose from and was rendered pursuant to the SPA, as incorporated into the CBA, within the meaning of the Labor-Management Relations Act, 29 U.S.C. § 185.

4.      This Court has jurisdiction over these proceedings pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185(a) and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*.

5.      Venue is proper in this District pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185 because Petitioner is located in the District and Respondent's duly authorized officers or agents are engaged in representing and acting for employee members within this District.

## FACTS

6.      Petitioner and Respondent are the parties to the CBA.  *See* Exhibit A of Declaration of Dimitrios Efstathiou ("Efstathiou Decl.") (relevant pages attached).  The CBA, which is currently in effect, covers all players employed who have signed SPAs with MLS.

7.      Pursuant to Article 18.1 of the CBA, all MLS players sign the form SPA that has been collectively bargained between MLS and the Union. *See* Efstathiou Decl., Exhibit B.

8.      CBA Article 18.1, titled "Standard Player Agreement," provides:

2

Case 1:21-cv-04258-VM   Document 1   Filed 05/12/21   Page 3 of 8


All Players will execute a Standard Player Agreement (in the form attached as Exhibit 1). No agreement concerning a Player's terms and conditions of employment shall be valid unless: it is between a Player and MLS and is signed by each party, and it is contained in one of the above-referenced forms, including any Schedule thereto.

9.     Paragraph 9 of the SPA, titled "Player's Unique Skill and Breach of Agreement;

Dispute Resolution," states as follows:

(a)  The Player represents and agrees that he has extraordinary and unique skill and ability as a soccer player, that the services to be rendered by him under this Agreement cannot be replaced or the loss thereof adequately compensated for in money damages, and that any breach by the Player of this Agreement will cause irreparable injury to MLS and to its assignees.  In addition, the Player understands and acknowledges that failing to report to training, games, appearances, and/or demonstrations ("Holding Out") constitutes a breach of this Agreement and is extremely disruptive to the operation of the League. Therefore, it is agreed that *in the event in that MLS believes the Player is, during the Term of this Agreement, Holding Out or playing, attempting or threatening to play, or negotiating for the purpose of playing for any other person, firm, corporation, team or organization, without the prior written consent of MLS, then MLS and its assignees shall have the right to utilize the expedited arbitration mechanism provided in subparagraph (c) below*.

(b) The Player and MLS agree that it is the specific intent of both parties that this Player Agreement remains valid and enforceable during the entire Term of this Agreement (including any extensions thereto set forth in the Schedule). The Player further agrees that he hereby waives any right he may otherwise have had pursuant to the FIFA[1] Regulations Governing the Status and Transfer of Football Players (including without limitation the Application  Regulations referenced therein) to unilaterally breach or terminate this Agreement pursuant to such Regulations (including without limitation any right he may have to so breach or terminate this Agreement for sporting just cause or otherwise) prior to the end of the Term of this Agreement, including option periods, if any.

(c) Expedited Arbitration

i.   Expedited arbitration hearings under this Paragraph shall be held within forty-eight (48) hours of the filing of a demand for such arbitration. No prior grievance steps shall be required.

---

[1] Federation Internationale de Football Association ("FIFA") is the international governing body of football/soccer competition among national associations.

3

ii.   The arbitration shall take place in New York. Each party shall bear its own costs.

iii.   MLS shall notify the Impartial Arbitrator, the Union and the Player and/or his agent if any, in writing of the demand for an expedited arbitration as well as of the time and place for the hearing as soon as practicable.

iv.   The failure of any party to attend the hearing as scheduled shall not delay the hearing, and the Impartial Arbitrator shall proceed to take evidence and issue an award as though such party were present.

v.   The Impartial Arbitrator shall issue a decision as soon as possible, but in no event more than twelve (12) hours after the hearing has been completed.

vi.   *If the Impartial Arbitrator finds that the Player has breached this Agreement, the Impartial Arbitrator shall order that the Player not play, attempt to play or threaten to play soccer for any team other than a Team in the League.*

vii.   *The decision of the Impartial Arbitrator shall be final and binding on the parties and may be immediately entered as a judgment in any court of competent jurisdiction and/or communicated to FIFA.*

viii.   *The Player and MLS understand and agree that once a judgment has been entered pursuant to this Paragraph 9(c), such judgment may be immediately taken by either party to the relevant FIFA body or tribunal to be entered and enforced. It is further agreed that such a judgment may be submitted to any court having jurisdiction for the purpose of obtaining such equitable relief as may be appropriate, including but not limited to a decree enjoining the Player from any further breach of this Agreement and from playing soccer for any other person, firm, corporation or organization during the Term of this Agreement, without MLS posting a bond or other security or proving actual damages.*

(d)   All disputes arising under this Agreement are disputes under the CBA. Except for a proceeding pursuant to the provisions of this Paragraph 9, the parties agree that all disputes relating to or arising out of this Agreement shall be subject to the grievance procedures set forth in Article 21 of the CBA.

4

123020955v3

(e) The Player and MLS hereby expressly waive all rights to bring for resolution on the merits of any claim, action, dispute or grievance to any FIFA body or tribunal, including any right(s) either may have pursuant to the FIFA Regulations Governing the Status and Transfer of Football Players (including without limitation the Application Regulations referenced therein and the dispute resolution, disciplinary, and arbitration system set forth in Chapter XIV). The Player and MLS agree that once a judgment has been rendered pursuant to this Paragraph 9, either party may immediately take such judgment to the relevant FIFA body or tribunal to be entered and enforced.

(Emphasis added.)

10.     On February 16, 2018, Kaku, a player represented by the Union, signed an SPA containing Paragraph 9 as set forth above. *See* Efstathiou Decl., Exhibit C.

11.     Kaku's SPA, and the Schedule to his SPA, which he signed on February 6, 2018, included three guaranteed contract years (calendar years 2018, 2019, and 2020), followed by two option years (calendar years 2021 and 2022) that could be exercised unilaterally at the discretion of MLS, which, if exercised, would extend Kaku's contract to December 31, 2021 and December 31, 2022, respectively.

12.     Upon signing his SPA, Kaku was assigned to play for the New York Red Bulls team of MLS.

13.     In accordance with the terms of Kaku's SPA, on March 3, 2020, MLS exercised the option to extend Kaku's contract through 2021.

14.     Despite MLS's valid exercise of the option to extend Kaku's contract through 2021, on January 18, 2021, the Union informed MLS that it was "the position of the MLSPA that Kaku is currently out of contract" and, therefore, "in accordance with his SPA and the CBA, Kaku's contract with MLS terminated on its terms on December 31, 2020, and he is free to sign with any other club/league around the world."

15.     On February 1, 2021, MLS learned via social media and news outlets that Kaku had signed a contract to play with Al-Taawoun FC of the Saudi Professional League, in violation of the CBA and Paragraph 9 of his SPA.

16.     In early February of 2021, MLS learned that the Saudi Arabian Football Federation ("SAFF") had requested an International Transfer Certificate ("ITC") from FIFA to permit Kaku to begin playing for Al-Taawoun despite his contractual commitment to MLS.

17.     On February 15, 2021, MLS sent a letter to the Union invoking the arbitration procedure set forth in Paragraph 9 of the SPA to resolve the dispute over the exercise of the option to extend Kaku's contract.

18.     In the interim, Kaku began playing for Al-Taawoun, in further breach of his SPA and the CBA.

19.     Following a mutually-agreed schedule for the proceedings, an arbitration hearing was held before Arbitrator Shyam Das on March 3, 2021 and March 12, 2021.  MLS and the Union each were represented by counsel and Kaku testified during the hearing in addition to numerous other witnesses.

20.     On April 2, 2021,[2] Arbitrator Das issued his "Opinion and Award" in favor of MLS, finding that "Kaku has breached his SPA with MLS by signing with and playing for a team outside MLS in 2021, because MLS effectively exercised its option to extend his contract through December 31, 2021. *See* Efstathiou Decl., Exhibit D.

21.     Arbitrator Das's "Award" states:

> Alejandro Romero Gamarra (a/k/a "Kaku") breached his Player Agreement with Major League Soccer as set forth in the above Findings. The Player is ordered to not play, attempt to play or threaten to play soccer for any team other than a Team in Major League Soccer, as provided in Paragraph 9(c)(vi) of his Player Agreement.

_____

[2] The parties mutually agreed at the hearing that the arbitrator would issue his opinion and award by April 2, 2021.

123020955v3

22.     Despite the Arbitrator's Award, which ordered Kaku not to play, attempt to play or threaten to play soccer for any team other than a Team in Major League Soccer," Kaku, as of this date, continues to play for Al-Taawoun in Saudi Arabia and has declined to report to the New York Red Bulls for the start of the 2021 season.

23.     Each additional game that Kaku plays for Al-Taawoun not only constitutes a continuing breach of the CBA and the SPA, but also the Arbitrator's Award.

24.     Paragraph 9(c)(vii) of the SPA states that "[t]he decision of the Impartial Arbitrator shall be final and binding on the parties and may be immediately entered as a judgment in any court of competent jurisdiction and/or communicated to FIFA."

25.     Despite the Union's obligation under Article 6.1 of the CBA to "exert all reasonable efforts to induce compliance" by a player who declines to fulfil his obligations under his SPA, the Union's efforts are ineffective or being ignored – thus requiring judicial intervention to confirm and enforce the Arbitrator's Award.

26.     Respondent has not sought to vacate, modify, or challenge the Arbitrator's Opinion and Award.

27.     Petitioner is entitled to confirmation and enforcement of the "Arbitrator's Opinion and Award" in conformity therewith pursuant to the LMRA, 29 U.S.C. § 185, and §§ 9 & 13 of the FAA.

7

WHEREFORE, Petitioner prays that this Court enter a judgment (i) confirming and enforcing the April 2, 2021 "Arbitrator's Opinion and Award" and (ii) providing Petitioner with such other and further relief as the Court deems proper.

Dated:      New York, New York          Respectfully submitted,
            May 12, 2021

                                         /s/*Howard Z. Robbins*
                                         Howard Z. Robbins
                                         Jonathan R. Gartner
                                         PROSKAUER ROSE LLP
                                         11 Times Square
                                         New York, New York 10036
                                         Telephone:  (212) 969-3000
                                         Facsimile:  (212) 969-2900
                                         hrobbins@proskauer.com
                                         jgartner@proskauer.com
                                         Attorneys for Petitioner

123020955v3