# EXHIBIT C

# SCHEDULE

## TO STANDARD MLS PLAYER AGREEMENT

## PLAYER'S NAME

## ALEJANDRO ROMERO GAMARRA

### TERM

**EMPLOYMENT COMMENCEMENT DATE:**   February 9, 2018

**INITIAL TERMINATION DATE:**   December 31, 2020

### COMPENSATION

For performance of your services under this Agreement, we shall pay you at the rate of:

*Fifty-Nine Thousand Ninety And 90/100* — handwritten annotation

*ASRG Initialed by Alejandro Romero Gamarra* — handwritten annotation

1. ~~Fifty-Four Thousand One Hundred Sixty-Six And 66/100~~ Dollars (U.S. $59,090.90), per month, gross of taxes, from February 9, 2018 through December 31, 2018;

2. Sixty-Six Thousand Six Hundred Sixty-Six And 66/100 Dollars (U.S. $66,666.66), per month, gross of taxes, from January 1, 2019 through December 31, 2019;

3. Seventy Thousand Eight Hundred Thirty-Three And 33/100 Dollars (U.S. $70,833.33), per month, gross of taxes, from January 1, 2020 through December 31, 2020;

Such compensation shall be paid in equal semi-monthly installments on the 15th and end of each month, and shall be pro-rated for any portion of a month that you are an MLS employee, unless otherwise stated.

### PLAYER CATEGORY

Your Player Category shall be Guaranteed.

### ANY FOOTWEAR SUPPLIER CONTRACTS (please complete)

Manufacturer's Name  *NIKE*                    Date of Contract

### ANY OTHER SPONSORSHIP/ENDORSEMENT CONTRACTS (please complete)

Manufacturer's Name(s)                    Date of Contract

*ASRG* — handwritten signature

CONFIDENTIAL

## OTHER PROVISIONS

1. <u>Conditions.</u> This Agreement (this Schedule and the MLS Standard Player Agreement) is subject to and conditioned upon:

   a. MLS's receipt of your international clearance;

   b. Your being registered by the United States Soccer Federation to MLS;

   c. Your receipt and maintenance of all necessary work documentation so that you may work in the United States or Canada;

   d. Your passing a medical examination to our satisfaction (in our sole and absolute discretion);

   e. MLS' receipt of the signed and completed transfer agreement from your former club, Club Atletico Huracan;

   f. MLS's receipt of a settlement agreement, in form and substance satisfactory to MLS and Red Bull New York, Inc. ("RBNY"), duly executed by Marcelo Simonian;

   g. MLS's receipt of a Waiver and Release agreement, in form and substance satisfactory to MLS and RBNY, duly executed by Gustavo Casasola; and

   h. MLS's receipt of a Waiver and Release agreement, in form and substance satisfactory to MLS and RBNY, duly executed by Scott Pearson.

   In the event the conditions set forth in Section 1, above, are not fully satisfied on or before February 20, 2018 this Agreement shall be null and void.

2. <u>Extensions.</u>

   a. <u>Option through 2021.</u> We may, by giving you written notice on or before December 1, 2020, extend your employment with us for an additional twelve months (i.e. until December 31, 2021) for a base salary of Ninety-One Thousand Six Hundred Sixty-Six And 66/100 Dollars (U.S. $91,666.66) per month, gross of taxes;

   b. <u>Option through 2022.</u> We may, by giving you written notice on or before December 1, 2021, extend your employment with us for an additional twelve months (i.e. until December 31, 2022) for a base salary of One Hundred Thousand And No/100 Dollars (U.S. $100,000) per month, gross of taxes;

   c. <u>Consideration Acknowledgement.</u> You hereby acknowledge and agree that the benefits set forth in this Agreement (which includes this Schedule and the MLS Standard Player Agreement), including, but not limited to, a base salary during the initial term that reflects additional value to you in return for our receiving Two (2) extension option(s), the increase in base salary during the extension(s), and the performance bonuses set forth below in Section 3 are, collectively, adequate and sufficient consideration for the Extension(s) provided for in this Section 2.

A S R 6

CONFIDENTIAL

MLSRB00000047

3. <u>Performance Bonuses.</u> If, during any MLS season (unless otherwise noted), you achieve any of the performance targets set forth below, you will receive a bonus as set forth below for the performance target achieved. Any such payment shall be made to you, by us, on or before December 31 of the relevant year. The performance targets are as follows:

<u>Appearance & Competition Result Bonuses</u>:

a. **MLS Team 75 %+ Start & MLS Supporters' Shield:** Fifteen Thousand And No/100 Dollars (U.S. $15,000) if you are a starting eleven member in Seventy-Five percent (75%) or more of the MLS Regular Season Matches (which does not include MLS Play-off matches, the U.S. Open Cup or other tournaments and exhibitions) for the MLS Team to which you are assigned <u>AND</u> such team wins the MLS Supporters' Shield;

b. **MLS Team 75 %+ Start & MLS Cup Champion:** Thirty Thousand And No/100 Dollars (U.S. $30,000) if you are a starting eleven member in Seventy-Five percent (75%) or more of the MLS League Season Matches (which includes only MLS Regular Season and Play-off matches and does not include the U.S. Open Cup or other tournaments and exhibitions) for the MLS Team to which you are assigned <u>AND</u> such team is the MLS Cup Champion;

c. **MLS Team 75 %+ Start & CONCACAF Champions League Champion:** Twenty Thousand And No/100 Dollars (U.S. $20,000) if you are a starting eleven member in Seventy-Five percent (75%) or more of the CONCACAF Champions League matches for the MLS Team to which you are assigned <u>AND</u> such team is the CONCACAF Champions League Champion;

d. **MLS Team 75 %+ Start & U.S. Open Cup Champion:** Twenty Thousand And No/100 Dollars (U.S. $20,000) if you are a starting eleven member in Seventy-Five percent (75%) or more of the U.S. Open Cup matches for the MLS Team to which you are assigned <u>AND</u> such team is the U.S. Open Cup Champion;

<u>Individual Performance Bonuses</u>:

e. **MLS Team Top 3 in Goals, Points or Assists:** Fifteen Thousand And No/100 Dollars (U.S. $15,000) if you are among the top Three (3) player(s) with respect to official Goals, Points or Assists (assigning one point to an official assist and two points to an official goal) on the MLS Team to which you are assigned during the MLS Regular Season. For the avoidance of doubt, in the event you are among the top Three (3) player(s) with respect to more than one of the categories described in this section in the same season, then you shall receive only $15,000 pursuant to this bonus;

<u>Standard Bonuses</u>:

f. **MLS Team MVP or Team Defensive MVP:** Fifteen Thousand And No/100 Dollars (U.S. $15,000) if you are named the official Team Most Valuable Player or Team Defensive MVP of the MLS Team to which you are assigned. For the avoidance of doubt, in the event you are both the Team MVP and Team Defensive MVP in a given year, you shall earn a total of $15,000 pursuant to this bonus;

g. **MLS All-Star:** Fifteen Thousand And No/100 Dollars (U.S. $15,000) if you are named to

CONFIDENTIAL

MLSRB00000048

the official MLS All-Star Team;

h. **MLS All-League:** Fifteen Thousand And No/100 Dollars (U.S. $15,000) if you are named to the official MLS All-League Best Eleven;

i. **MLS League MVP or League Defensive MVP:** Fifteen Thousand And No/100 Dollars (U.S. $15,000) if you are the official MLS League Most Valuable Player or League Defensive Most Valuable Player. For the avoidance of doubt, in the event you are both the League MVP and League Defensive MVP in a given year, you shall earn a total of $15,000 pursuant to this bonus.

4. **Moving Expenses.** The Collective Bargaining Agreement between MLS and the MLS Players Union requires MLS, at a minimum, to reimburse Players to move their goods as follows: (a) for a professional for whom his MLS SPA is not his first professional contract, up to $7,500 in reasonable and necessary, documented relocation expenses, or (b) for players signing their first professional contract, or Home Grown Players or college-protected players from teams or leagues in lower divisions in the U.S. and Canada, up to $7,500 in reasonable and necessary, documented relocation expenses, or if the Player chooses, a $5,000 cash stipend which will be treated as taxable income to the Player. MLS agrees to provide the Player with no additional relocation expenses.

5. **Entire Agreement.** This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings whether oral or written (including, but not limited to, any previous Schedule to the MLS Standard Player Agreement (including amendments thereto), MLS Standard Player Agreement (including amendments thereto), side agreement, or any other previous agreement between you and Major League Soccer) regarding the subject matter hereof.

6. **Interpretation of this Agreement.** This Agreement shall be construed in accordance with federal common labor law under Section 301 of the National Labor Relations Act and in accordance with generally accepted interpretive principles applicable in labor arbitration in the United States. The parties agree that in the event there is a conflict between the terms of this Agreement and the rules, regulations and/or guidelines of FIFA, the terms of this Agreement shall prevail. The parties further agree that in the event a provision in this Agreement is inconsistent with or in contravention of a rule, regulation and/or guideline of FIFA, the provision shall be deemed valid and enforceable. Finally, the parties agree that the language of this Agreement shall be construed neutrally and without regard for which party drafted the Agreement.

You acknowledge and agree, by signing this Agreement below, that you understand in full and agree to be bound by the terms of this MLS Standard Player Agreement, the CBA, the Player Handbook and the MLS Player Substance Abuse and Behavioral Health Program and Policy (copies of which are on file in the Union and MLS offices).

You acknowledge and agree, by signing this Agreement below, that you have received in full, read in full and understand in full the terms and conditions of this Schedule AND the MLS

CONFIDENTIAL

MLSRB00000049

Standard Player Agreement and are in agreement with all of the terms and conditions contained in them.

This SPA will be translated into French, Italian, Portuguese, or Spanish at your request. In all cases of translation, the English language version of the SPA shall control.

Este SPA será traducido al Francés, Italiano, Portugués o Español, según su petición. En todos los casos la versión en Inglés del SPA estará en control.

O SPA serão traduzidas para o francês, Italiano, Portugués ou espanhol, de acordo com seu pedido. Em todos os casos a versão em Inglés será no controle do espanhol.

Questo Contratto del Giocatore sarà a richiesta tradotto in francese, italiano, portoghese o spagnolo. La versione inglese del Contratto del Giocatore avrà comunque prevalenza legale su tutte le versioni tradotte.

Ce contrat-type de Joueur sera traduit en Français, Italien, Portugais ou Espagnol à votre demande. Quelle que soit la traduction, la version anglaise du contrat type aura préséance.

[Signature page to follow]

CONFIDENTIAL

MLSRB00000050

THIS AGREEMENT SHALL BE VALID ONLY WHEN SIGNED BY BOTH PARTIES BELOW.

The Player: ALEJANDRO ROMERO GAMARRA

Signature:

Date: 06/02/2018

Major League Soccer, LLC

By: J. TODD DURBIN

Its: EXECUTIVE VICE PRESIDENT.

CONFIDENTIAL

MLSRB00000051

# EXHIBIT 1

## STANDARD PLAYER AGREEMENT



STANDARD PLAYER AGREEMENT

CONFIDENTIAL

ASR6

MLSRB00000052



## MAJOR LEAGUE SOCCER

### STANDARD PLAYER AGREEMENT

This Agreement is made on and is effective as of the date set forth on the
final page of this Agreement,
by and between
MAJOR LEAGUE SOCCER, L.L.C., a Delaware limited liability company ("MLS")
and
the Player whose name appears on the final page of this Agreement
under the heading "The Player" (the "Player").

It is agreed as follows:

This Player Agreement, including any riders hereto, is subject to the terms of, and
amendment by, the Collective Bargaining Agreement between MLS and the Major League
Soccer Players Union (the "CBA"). The terms of the CBA shall prevail over any conflicting
term in this agreement except that the parties to this agreement may agree upon terms over and
above the minimum requirements established in the CBA. All capitalized terms used but not
otherwise defined herein shall have the meaning given to such terms in the CBA.

In consideration of the respective obligations herein and hereby assumed, the parties to
this Player Agreement ("Agreement") hereby agree as follows:

1.    Definitions.

(a) "Embodiment" means any communication or embodiment of any Likeness of the
Player, alone or together with other Players' Likenesses, which is recognizable or identifiable,
whether live, reproduced or simulated, still or moving, in audio, visual, audiovisual and other
forms, and no matter how stored, transmitted, distributed or otherwise communicated to others,
by any means or media now or hereafter known.

(b) "Likeness" means a Player's:

(i)    picture, image, photograph, portrait or performance (whether such picture,
image, photograph, portrait or performance is still, motion, video, digital,
high definition or any other medium now known or hereafter developed);

*ASN6*

MLSRB00000053

(ii)     name or nickname;

(iii)    signature or facsimile thereof;

(iv)     voice;

(v)      identifiable attributes or any colorable imitation or adaptation thereof; or

(vi)     to the extent that he has rights therein, biographical data.

(c) "Official Equipment Supplier" shall mean a supplier of athletic equipment to MLS. The number of Official Equipment Suppliers to MLS may increase or decrease during the Term of this Agreement. The list of current Official Equipment Suppliers is set forth in Exhibit 1 hereto and will be updated as necessary.

(d) "Pre-Existing Agreement" means any sponsorship or endorsement agreement for on-field footwear or goalkeepers' gloves relating to the Player in existence at the date of this Agreement and disclosed in the Schedule hereto; provided, however, that the Player may not validly disclose an agreement in such Schedule as a "Pre-Existing Agreement" if such agreement was entered into in breach of the Player's obligations under any previous Player Agreement with the League. The Player agrees to provide a copy of the duration/term provision and signature page of such Pre-Existing Agreement.

(e) "Promotional Rights" shall mean the right to promote, advertise and otherwise disseminate, by any means or media now or hereafter known, any Embodiments, created during the Term of this Agreement, for the promotion, marketing or advertising of MLS, any Team or the sport of professional soccer in general, during or after the Term of this Agreement.

(f)      "Term of this Agreement" means the period commencing as of the date of this Agreement and ending on the Expiration Date set forth in the Schedule, unless this Agreement (i) is terminated prior to that date pursuant to its terms or pursuant to the CBA, in which case "Term of this Agreement" shall mean the period commencing as of the date of this Agreement and ending on the date of such termination, or (ii) is extended one or more times pursuant to Paragraph 2, above, in which case "Term of this Agreement" shall mean the period commencing as of the date of this Agreement and ending on the final day of the final such extension.

2.     Term, Compensation and Player Category.  MLS hereby employs the Player as a skilled soccer player commencing on the Employment Commencement Date as set forth in the Schedule through the Expiration Date as set forth in the Schedule, and agrees, subject to the terms and conditions hereof, to pay the Player a salary in the gross amount (subject to tax withholdings and other applicable payroll deductions) as set forth under Compensation in the Schedule.

(a)      The Player shall also be eligible to receive certain bonuses and other benefits in accordance with the CBA.

(b)      Any remuneration payable by MLS to the Player under this Agreement is subject to tax withholdings and other applicable payroll deductions.

2

*ASR6*

DocuSign Envelope ID: C65EE312-6589-4630-8A95-42989F96BF46

(c)     Prior to the Employment Commencement Date, the Player will not be employed by MLS and will not be covered by workers' compensation insurance or by any other insurance or employee benefit of MLS (including health insurance) by virtue of this Agreement.

(d)     The parties to this Agreement have also agreed to the specific terms set forth in the Schedule.

(e)     The Player Category under this Agreement shall be as set forth in the attached Schedule.

3.     Extensions.  The Player agrees that he shall provide his services as a skilled soccer player during the Term of this Agreement .  The parties to this Agreement have also agreed that MLS may, at its sole option, extend this Agreement pursuant to the attached Schedule.

4.     Player Obligations.  In addition to the obligations set forth in the CBA, at all times during the Term of this Agreement the Player shall:

(a)     not play soccer or attempt to play any type of soccer (i.e., indoor or outdoor, and regardless of the surface) for any team other than the Team, except with the prior written consent of MLS, to be given or withheld in its sole and absolute discretion;

(b)     maintain a high level of physical and mental conditioning and competitive skills, not engage in alcohol abuse, not use drugs or any other substances in contravention of the MLS Player Substance Abuse and Behavioral Health Program and Policy, and generally develop and maintain a physical and mental readiness necessary to play for the Team;

(c)     serve as a spokesman for soccer, the Team, the League and MLS when reasonably requested by MLS to do so;

(d)     comport and conduct himself at all times, both on and off the field, to a high standard of honesty, fair play and sportsmanship and in a manner befitting his position as a representative and promoter of soccer, the Team, MLS, and the League and comply with all applicable laws;

(e)     refrain from conduct which is detrimental to the reputation and public image of the Team or of MLS; and

(f)     submit to drug testing as required under the MLS Player Substance Abuse and Behavioral Health Program and Policy.

5.     Conditions to Effectiveness of Agreement: This Agreement shall not be effective until MLS has received any necessary documents concerning the Player's transfer from or waiver by a non-MLS team and/or league.  MLS's obligation to make any payments or to provide any benefits shall be suspended for any period during which the Player is prevented from entering or working in the United States or any other country in which a Team is located because of immigration laws, regulations or rulings, or has not received or maintained all visa or other documents necessary to work for MLS in the United States, or he has not received appropriate clearances from FIFA or any relevant governing body, unless such a situation has arisen as a

3

*A5Π6*

result of MLS's negligent action or inaction and the making of such payments would not be prohibited by law. This Agreement is also subject to the conditions set forth in the attached Schedule.

6.      Exclusive Compensation: Except as otherwise contemplated in this Agreement or the CBA, the Player shall not be permitted to receive any payments or other benefits from any Team or the Team Operator or a Related Entity of either of them, in exchange for the services provided by the Player under this Agreement. In the event that the Player receives any payments or other benefits (except for per diem payments, relocation expenses or Designated Player payments that are approved by the League) from any Team or the Team Operator or a Related Entity of either of them, the Player shall promptly disclose such payments or benefits to the League or the Team. In the event of any dispute under this Section, the Player shall have the burden to show that such a payment or benefit (i) was not received in exchange for the services provided by the Player under this Agreement and (ii) represents fair market value for the services provided. Non-disclosure of a non-material contravention of this Section by the Player shall not constitute a terminable offense.

7.      Representations and Warranties: The Player represents and warrants as follows:

        (a)      that he is not obligated to play soccer in or for any other league or team during the Term of this Agreement other than the League or the Team;

        (b)      unless expressly and specifically otherwise provided in this Agreement, that by virtue of this Agreement MLS owns his international registration and his playing rights, and that neither the Player nor any third party has any rights therein or will attempt to assert any rights therein against MLS;

        (c)      that he is free to enter into this Agreement and that his doing so does not violate any other agreement to which he may be a party;

        (d)      that he does not and will not, either directly or indirectly, own any stock or hold any other ownership or financial interest in MLS or any Team Operator, or a Related Entity of either of them;

        (e)      that by signing this Agreement he understands and accepts that he is waiving any remaining National Collegiate Athletic Association eligibility or college scholarship or grant (not including any scholarship or grant provided by the League, unless otherwise set forth in the Schedule);

        (f)      that he has and shall maintain a valid passport and is able to undertake such international travel as may be required pursuant to this Agreement;

        (g)      that, other than as set forth in the Schedule, he knows of no physical or mental conditions that could impair his ability to play skilled professional soccer during the Term of this Agreement and has not knowingly concealed any such conditions;

4

ASN6

CONFIDENTIAL

(h)     that, other than any Pre-Existing Agreements, he is not a party to any agreement which would require him to wear or in any way endorse any on-field product or would prevent him from wearing or endorsing any on-field product;

(i)     that he has not breached any previous Player Agreement with MLS, in particular but without limitation, in connection with the provisions governing endorsement contracts; and

(j)     that his date of birth as it appears on the final page of this Agreement under the heading "The Player" is true and correct.

(k)     MLS represents and warrants that it is free to enter into this Agreement and that its doing so does not violate any other agreement to which it may be party.

(k)     The warranting party will indemnify, defend and hold the other party harmless of and from any claims, actions, demands, losses, costs, expenses, liabilities, penalties and damages in the event its representations and warranties set forth in this Paragraph are in any way materially inaccurate, and the warrantee will use reasonable efforts to mitigate any loss suffered by it.

8.     Video/Digital Images, Pictures, Likenesses, Endorsements and Promotions

(a)     The Player agrees that during the Term of this Agreement MLS and the Team shall have the right to create or have created Embodiments, individually and/or as part of a group, at or in connection with any training, games (including Player features for game broadcasts) and/or promotional activities. The Player also agrees to be available during the Term of this Agreement, individually or with other Players on his Team or in MLS, to have Embodiments created at such reasonable times and places as MLS or the Team shall designate. The Player agrees that MLS shall have Promotional Rights with respect to any Embodiments created under this Agreement or the Group License Agreement. All rights, including but not limited to copyright, worldwide in any such Embodiments shall belong to MLS and the Player hereby assigns such rights to MLS together with all causes of action. Except as MLS's rights of exploitation are limited under this Agreement or the Group License Agreement, all rights in the Embodiments created under this Agreement or the Group License Agreement and all Promotional Rights with respect to such Embodiments shall be exclusive, irrevocable and survive the termination of the Term of this Agreement (and without regard to the circumstances in which this Agreement expires or is terminated).

(b)     Group License

(i)     Grant of Group Licensing Rights – The Player hereby grants and assigns to the Major League Soccer Players Union (the "Union"), for its use or further assignment or licensing, the exclusive rights to his Likeness as are set forth in the Group License Agreement between MLS and the Union (the "Group License Agreement"), the terms of which the Player understands in full and by which he agrees to be bound. The Player acknowledges that the Union may grant these rights to MLS, with the understanding that MLS may further sub-license or assign these rights without his further approval or consent. The Player acknowledges that the

5

*ASR 6*

rights granted to the Union include, but are not limited to, as set forth in the Group License Agreement: the irrevocable and exclusive worldwide right in any and all media now or hereafter known, to use or license in a group of four (4) or more Players, the Likeness of every such Player (including the right to make individual use, or license the individual use, of a single Player's Likeness if used with three (3) or more other single Player Likenesses in a series, a set, collectible or as part of a sequential product) solely in combination with the use of any or all MLS and Team names, logos, trademarks, trade dress, uniforms or other form of MLS intellectual property, for any purpose, commercial or otherwise, including but not limited to: (1) in any MLS or Team promotion; in any form of trade or consumer promotion; in the promotion, marketing or advertising of any good, of any consumer product or of any service; in any form of public service programs, advertising or promotion.  Such rights shall also include the use of the Player Likeness in all collateral materials and/or packaging associated with the rights set forth the Group License Agreement; and (2) in any form of, or in connection with, Licensed Merchandise.  The Player understands and agrees that at the conclusion of the Term of the Group License Agreement and this Standard Player Agreement, MLS shall continue to have Game Rights as set forth in the Group License Agreement and this Standard Player Agreement, Promotional Rights as set forth in the Group License Agreement and this Standard Player Agreement and post-Term rights as set forth in Article II, Section 1 of the Group License Agreement.  The Player also understands and agrees to the rights and obligations concerning corporate sponsorships set forth in the Group License Agreement.

(ii)   Standard Player Agreement – The Player understands that nothing in the Group License Agreement or this Section 8(b) negates any of MLS's rights under this Standard Player Agreement and the Schedule.

(iii)   Power of Attorney and Joinder – The Player hereby authorizes the Union to act as attorney-in-fact with respect to actions to protect and enforce rights granted in this Section 8(b) and the Group License Agreement, with the understanding that the Union may further grant those enforcement rights to MLS, as such rights are set forth in Exhibit B to the Group License Agreement.  The Player further consents to MLS joining him as a party in any proceeding to prosecute or defend any claims relating to the Group License Agreement so long as MLS pays for the costs (including reasonable attorney's fees) of prosecuting and/or defending the Player's interests in such an action, provided however, that MLS shall not be required to pay such costs (including reasonable attorney's fees) if such joinder is in connection with the Player's obligation (set forth in this Agreement) to indemnify MLS.

(iv)   Further Assurances – The Player agrees to take such additional steps as MLS or the Union may reasonably request in connection with the Group

*ASN6*

CONFIDENTIAL

MLSRB00000058

License Agreement, at no additional cost to MLS or the Union, including but not limited to the execution of additional documents that may be necessary for MLS or the Union to implement, confirm or enforce their rights under this Section 8(b).

(v) <u>Acknowledgements</u> – The Player acknowledges that fees payable to the Union, specified in the Group License Agreement, constitute the entire consideration for rights granted in this Section 8(b). The Player further acknowledges that he has no claim or entitlement to any compensation, however denominated, arising from MLS's use or exploitation of such rights prior to the date of the Group License Agreement, including by any licensee or assignee. The Player further acknowledges that nothing in this Section 8(b) or the Group License Agreement is intended to confer upon him any rights, including but not limited to copyright, in the Embodiments created by or on behalf of MLS.

(vi) <u>Indemnification</u> – The Player represents and warrants that he has not entered into any other agreements concerning his rights of publicity that would in any way conflict with the Union's rights (or those of its licensee or assignee) under the Group License Agreement. The Player agrees to indemnify and hold MLS and the Union harmless from any claims, actions, demands, losses, costs, liabilities, penalties and damages arising out of his entering into agreements that conflict or interfere with the rights granted to the Union (or its licensee or assignee) under this Section 8(b).

(vii) <u>Definitions</u> – The capitalized terms set forth in this Section 8(b) shall have the meaning ascribed to them in the Group License Agreement.

(c) The Player agrees that he shall not:

i. use the name or logo of the Team, the League or MLS for any purpose unless he shall have received the prior written consent and approval of MLS (which may be withheld in MLS's sole and absolute discretion); or

ii. unless he shall have received the prior written consent and approval of MLS (which may be withheld in MLS's sole and absolute discretion), use or make any endorsements or commercial appearances, sponsor any products, consent to the use by any third party of any name, picture or likeness of the Player (A) in which he appears, either alone or with others, in any official Team uniform, in any attire which closely resembles or is substantially similar to any official Team uniform, or in any attire whatsoever bearing or displaying the marks and/or logos of either MLS or any Team, or (B) in which he appears together with two (2) or more other members of the Team or MLS in which the Player and the other members, either directly or indirectly, identify themselves as members of the Team or MLS, regardless of their attire, or (C) in which he either directly or indirectly identifies himself as a member of the Team or MLS.

7

AS 26

MLSRB00000059

(d)     The Player agrees that, except as specified in Paragraph 8(e) or (f) below, he shall wear and/or display only such footwear, clothing, equipment and other personal items as are endorsed by MLS or the Team (and shall promptly obey and comply with any and all other guidelines and directives hereinafter issued by MLS or the Team regarding apparel and/or equipment, permitted or not permitted to be worn or utilized by members of the Team), at Team games, practices or training camps, at clinics or other events sponsored or arranged by the Team or MLS, at all Player appearances, and/or while traveling with the Team.

(e)     The Player shall not display any logo upon or endorse, or agree to display any logo upon or endorse, any item of on-field equipment which is not produced by the Team's Official Equipment Supplier, except for footwear or goalkeeper's gloves which may be worn pursuant to a Pre-Existing Agreement disclosed in the Schedule or pursuant to the procedures set forth in Paragraph 8(f) below.

(f)     The Player may only enter into an agreement for the endorsement of any shoe or goalkeeper's glove brand with one of MLS's Official Equipment Suppliers if he follows the following procedure:

> i.   Prior to his assignment to an MLS Team, the Player may enter into negotiations for the endorsement of a shoe or goalkeeper's glove brand with any of MLS's Official Equipment Suppliers.
>
> ii.  Upon his initial assignment to a Team, the Player shall enter into good faith negotiations exclusively with the official MLS supplier of footwear to the Team to which the Player is assigned and shall refrain from entering into any discussions in connection with the endorsement of any other supplier's brand. The period of exclusive negotiation shall be thirty (30) days from the date of assignment.
>
> iii. If the Player fails to reach agreement with his Team's footwear supplier within the period of exclusive negotiation, he shall be free to negotiate an endorsement contract during the Term of this agreement only with any of MLS's other Official Equipment Suppliers, and shall be permitted to wear, display the logo of and endorse such other brand upon his shoes or goalkeeper's gloves. For the avoidance of doubt, the Player shall nevertheless be bound to wear all other items of equipment (except shoes and goalkeeper's gloves) as are endorsed or supplied by the Team and MLS as set forth in Paragraph 8(d) above.
>
> iv.  Where the Player has no agreement with a supplier of footwear for the endorsement of its product, the Player shall be required to wear, and display on his footwear or gloves, only the logo of the official MLS supplier of footwear to the Team to which he is assigned.

(g)     Subject to sub-paragraphs (a) to (f) above, the Player may make any endorsements and commercial appearances and may sponsor any products, whether for pay or not, on behalf of himself or any third party; provided, however, that the Player shall not make

8

A5ՈG

MLSRB00000060

any such endorsement, commercial appearance or sponsorship which MLS determines, in its reasonable discretion, would be detrimental to or inconsistent with (i) the development of soccer in the United States or (ii) the reputation, integrity or image of MLS or the Team. The Player acknowledges, however, that he may not enter into any contracts or other arrangements for endorsements, commercial appearances or sponsorships which would be inconsistent with or impose restrictions on MLS's or the Team's right to require the Player to have his picture taken or Embodiment created for any of the purposes set forth in sub-paragraphs (a) above, (h) below and, except as otherwise set forth in the Group License Agreement, sub-paragraph (b) above.

(h) The Player agrees that MLS shall have the exclusive, irrevocable right, during and after the Term of this Agreement (and without regard to the circumstances in which this Agreement expires or is terminated) to use, distribute, and/or license, worldwide in any and all media now or hereafter known, Embodiments created by or for MLS of any performance by the Player during training and/or games (including any features containing a Player during any broadcast), by any means of distribution or other communication, audio and/or visual, including but not limited to home video devices, broadcast, telecast or other transmission or communication (such as, but not limited to radio, satellite radio, television, pay television, cable television, satellite television, internet, microwave or telephone, and any form of cassette, cartridge, laser disc, CD, DVD or other system, or any other means of distribution, whether known or unknown, presently existing or hereafter developed), together with any and all advertising and promotion, in any and all media now or hereafter known, relating thereto ("Game Rights"). After the Term of this Agreement, the Player agrees that MLS shall continue to have the rights set forth in this Section 8(h), provided, however, that after the earlier of the termination of this Agreement or the termination of the Term of the Group License Agreement, such rights shall not include the right to use an Embodiment derived from Game Rights to endorse any product or service or in connection with Licensed Merchandise.

9.    Player's Unique Skill and Breach of Agreement; Dispute Resolution

(a)    The Player represents and agrees that he has extraordinary and unique skill and ability as a soccer player, that the services to be rendered by him under this Agreement cannot be replaced or the loss thereof adequately compensated for in money damages, and that any breach by the Player of this Agreement will cause irreparable injury to MLS and to its assignees. In addition, the Player understands and acknowledges that failing to report to training, games, appearances, and/or demonstrations ("Holding Out') constitutes a breach of this Agreement and is extremely disruptive to the operation of the League. Therefore, it is agreed that in the event that MLS believes the Player is, during the Term of this Agreement, Holding Out or playing, attempting or threatening to play, or negotiating for the purpose of playing for any other person, firm, corporation, team or organization, without the prior written consent of MLS, then MLS and its assignees shall have the right to utilize the expedited arbitration mechanism provided in sub-paragraph (c) below.

(b)    The Player and MLS agree that it is the specific intent of both parties that this Player Agreement remains valid and enforceable during the entire Term of this Agreement (including any extensions thereto set forth in the Schedule). The Player further agrees that he hereby waives any right he may otherwise have had pursuant to the FIFA Regulations Governing the Status and Transfer of Football Players (including without limitation the Application

9

ASN6

MLSRB00000061

Regulations referenced therein) to unilaterally breach or terminate this Agreement pursuant to such Regulations (including without limitation any right he may have to so breach or terminate this Agreement for sporting just cause or otherwise) prior to the end of the Term of this Agreement, including options periods, if any.

(c) Expedited Arbitration

    i.   Expedited arbitration hearings under this Paragraph shall be held within forty-eight (48) hours of the filing of a demand for such arbitration. No prior grievance steps shall be required.

    ii.   The arbitration shall take place in New York. Each party shall bear its own costs.

    iii.   MLS shall notify the Impartial Arbitrator, the Union and the Player and/or his agent, if any, in writing of the demand for an expedited arbitration as well as of the time and place for the hearing as soon as practicable.

    iv.   The failure of any party to attend the hearing as scheduled shall not delay the hearing, and the Impartial Arbitrator shall proceed to take evidence and issue an award as though such party were present.

    v.   The Impartial Arbitrator shall issue a decision as soon as possible, but in no event more than twelve (12) hours after the hearing has been completed.

    vi.   If the Impartial Arbitrator finds that the Player has breached this Agreement, the Impartial Arbitrator shall order that the Player not play, attempt to play or threaten to play soccer for any team other than a Team in the League.

    vii.   The decision of the Impartial Arbitrator shall be final and binding on the parties and may be immediately entered as a judgment in any court of competent jurisdiction and/or communicated to FIFA.

    viii.   The Player and MLS understand and agree that once a judgment has been entered pursuant to this Paragraph 9(c), such judgment may be immediately taken by either party to the relevant FIFA body or tribunal to be entered and enforced. It is further agreed that such a judgment may be submitted to any court having jurisdiction for the purpose of obtaining such equitable relief as may be appropriate, including but not limited to a decree enjoining the Player from any further breach of this Agreement and from playing soccer for any other person, firm, corporation or organization during the Term of this Agreement, without MLS posting a bond or other security or proving actual damages.

    (d)     All disputes arising under this Agreement are disputes under the CBA. Except for a proceeding pursuant to the provisions of this Paragraph 9, the parties agree that all disputes

10

*AS11 6*

relating to or arising out of this Agreement shall be subject to the grievance procedures set forth in Article 21 of the CBA.

(e)     The Player and MLS hereby expressly waive all rights to bring for resolution on the merits any claim, action, dispute or grievance to any FIFA body or tribunal, including any right(s) either may have pursuant to the FIFA Regulations Governing the Status and Transfer of Football Players (including without limitation the Application Regulations referenced therein and the dispute resolution, disciplinary and arbitration system set forth in Chapter XIV). The Player and MLS agree that once a judgment has been rendered pursuant to this Paragraph 9, either party may immediately take such judgment to the relevant FIFA body or tribunal to be entered and enforced.

10.     <u>Non-Applicability of FIFA Regulations:</u>

(a)     The Player hereby agrees that the following provisions in the FIFA Regulations Governing the Status and Transfer of Football Players (including the Application Regulations referenced therein) shall not apply to this Agreement:

    i.   Chapter II. Non-Amateur Players, Article 4, Paragraph 2. The Player agrees and understands that this Agreement shall be for the Term of this Agreement set forth herein (which may be for less than one year and/or longer than five years, and which shall include any extensions thereto as set forth in the Schedule).

    ii.  Chapter VIII. Maintenance of Contractual Stability, Article 21, Paragraphs 1 and 2. The Player agrees that he hereby waives any right he may have pursuant to Chapter VIII, Article 21, Paragraphs 1 and 2 of the FIFA Regulations Governing the Status and Transfer of Football Players to terminate this Agreement prior to the conclusion of the Term of this Agreement (as defined in Paragraph 1, above).

    iii. Chapter VIII. Maintenance of Contractual Stability, Article 24. The Player agrees that he hereby waives any right he may have pursuant to Chapter VIII, Article 24 of the FIFA Regulations Governing the Status and Transfer of Football Players to terminate this Agreement for sporting just cause.

    iv.  Chapter XII.  Special Provisions, Article 35.  The Player agrees that he hereby waives any right he may have had pursuant to Chapter XII, Article 35 of the FIFA Regulations Governing the Status And Transfer of Football Players, and that such provision shall not apply to this Agreement. The Player understands and agrees that this Agreement shall be for the Term of this Agreement set forth herein, which may be longer than three years, and which shall include any options set forth in the Schedule.

    v.   Chapter XIV. Dispute resolution, disciplinary and arbitration system, Article 42. The Player agrees that the sole and exclusive dispute resolution procedures available for resolving any dispute between himself and MLS

11

*AS n6*

MLSRB00000063

are as set forth in the CBA and this Agreement. The Player therefore hereby waives any right to bring for resolution on the merits any claim, action, dispute or grievance to any FIFA body or tribunal, including any right(s) he may have pursuant to Chapter XIV, Article 42 of the FIFA Regulations Governing the Status and Transfer of Football Players. As set forth above, the Player understands and agrees that once a judgment has been rendered pursuant to the mechanism and appeals process provided for above, either MLS or the Player may immediately take such judgment to the relevant FIFA body or tribunal or any court having jurisdiction to be entered and enforced.

(b)     Instructions given or requests made by MLS to the Player pursuant to this Agreement may be made by the Team as agent for MLS, acting through its General Manager or Head Coach or his/their designees. The scope of the Team's authority to act as agent of MLS shall be as set forth in any agreement between the Team and MLS. In relation only to those instructions and/or requests specifically contemplated by this Agreement as being given by the Team, the Player shall be entitled to assume that the Team has the authority to act on MLS's behalf.

11.    Interpretation of this Agreement:

(a)     This Agreement shall be construed in accordance with federal common labor law under Section 301 of the National Labor Relations Act and in accordance with generally accepted interpretive principles applicable in labor arbitration in the United States. The parties agree that in the event there is a conflict between the terms of this Agreement and the rules, regulations and/or guidelines of FIFA, the terms of this Agreement shall prevail. The parties further agree that in the event a provision in this Agreement is inconsistent with or in contravention of a rule, regulation and/or guideline of FIFA, the provision shall be deemed valid and enforceable. Finally, the parties agree that the language of this Agreement shall be construed neutrally and without regard for which party drafted the Agreement.

(b)     If any provision of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement shall be enforced in accordance with their terms.

(c)     The Player shall be made available upon request by the USSF or his national association for international games, FIFA and CONCACAF tournaments, and Olympic Games competition, including preparation, qualification and final tournament games in accordance with FIFA rules.

12

ASN6

CONFIDENTIAL

**The Player acknowledges and agrees, by signing this Agreement below, that he understands in full and agrees to be bound by the terms of this MLS Standard Player Agreement, the CBA, and the MLS Player Substance Abuse and Behavioral Health Program and Policy (copies of which are on file in the Union and MLS offices).**

**El Futbolista reconoce y acepta que, con la firma de este Acuerdo, se deja sentado que ha comprendido y aceptado la totalidad de los términos y condiciones del Contrato Marco General de Futbolistas de MLS, el Convenio Colectivo, y el Programa y Reglamento de Abuso de Sustancias de Futbolistas de MLS y Comportamiento para su Salud. (copias de estos documentos los podrá encontrar en el Sindicato de Futbolistas y en las oficinas de la MLS)**

This Agreement is executed on _07/16/2018_ (date).

**THE PLAYER**

Name: _Alexandra Romero Gamarra_

Signature: _Romero_

Date of Birth: _01/11/1995_

Street Address: _____

City, State or Province, Zip Code, and Country:

_____

_____

U.S. SOCIAL SECURITY # OR CANADIAN SOCIAL INSURANCE #:

_____

Telephone: _____

Fax: _____

Street Address: _____

_____

City, State or Province, Zip Code, and Country:

_____

_____

13

A SN 6

MLSRB00000065

## PARENT OR GUARDIAN OF THE PLAYER (if applicable)

Name: _____

Signature: _____

## AGENT OR LAWYER OF PLAYER (if any)

Name:

Street Address:

City, State or Province, Zip Code, and Country:

_____

_____

Telephone: _____

Fax: _____

## MAJOR LEAGUE SOCCER, L.L.C.

By _____
   542925F42CC4451...

Its _____

14

ASnG

CONFIDENTIAL



**MLS**

Exhibit 1

**Official Equipment Suppliers**

adidas

Nike

PUMA

ASN6

CONFIDENTIAL