# EXHIBIT D

**SHYAM DAS, ARBITRATOR**

| | |
|---|---|
| In the Matter of Arbitration ) | ARBITRATOR'S OPINION |
| Between ) | AND AWARD |
| ) | |
| ) | In re Alejandro |
| ) | Romero Gamarra |
| MAJOR LEAGUE SOCCER ) | (a/k/a "Kaku") |
| ) | |
| ) | Case Heard: |
| ) | March 3, 2021 |
| and ) | March 12, 2021 |
| ) | |
| ) | Post-Hearing Statements |
| ) | Submitted: |
| MAJOR LEAGUE SOCCER ) | March 19, 2021 |
| PLAYERS ASSOCIATION ) | |
| On Behalf of ALEJANDRO ) | Award Issued: |
| ROMERO GAMARRA ) | April 2, 2021 |

**Appearances**

For MAJOR LEAGUE SOCCER:

    PROSKAUER ROSE LLP
      Howard Robbins, Esq.
      Jonathan Gartner, Esq.

For MAJOR LEAGUE SOCCER PLAYERS ASSOCIATION:

    John C. Andris, Esq.
      Staff Counsel

    SHERMAN DUNN, P.C.
      Jonathan D. Newman, Esq.

**<u>BACKGROUND</u>**                                                                 Kaku/MLS

On February 15, 2021, Major League Soccer invoked the Expedited Arbitration provisions in Paragraph 9(c) of the Standard Player Agreement (SPA) signed by Alejandro Romero Gamarra (a/k/a "Kaku") alleging that Kaku violated his SPA by signing with and/or playing for Al-Taawoun FC while still under contract with MLS.[1]  Whether such violation occurred is the ultimate issue in this case.  Resolution of that issue turns on whether Kaku remained under contract with MLS beyond December 31, 2020, which depends on whether MLS effectively exercised its option to extend his contract through December 31, 2021.

Kaku is signatory to an SPA with MLS that commenced on February 9, 2018 and had an initial termination date of December 31, 2020.  The SPA contains two unilateral options for which "adequate and sufficient consideration" are acknowledged in the SPA.  The first of these options gave MLS the option to extend the contract through December 31, 2021 by giving him written notice on or before December 1, 2020.  On February 9, 2020 Dimitrios Efstathiou, MLS Senior vice President, Player Relations and Competition, signed an Option Exercise Letter (option notice) addressed to Kaku, which indicates "<u>VIA HAND DELIVERY</u>" and states:

> This letter constitutes formal notification
> to you that your employment agreement with
> us (the MLS Standard Player Agreement and
> the Schedule to that Agreement (together
> with any amendments and/or addendums
> thereto, your "Employment Agreement")) is

---

[1] Time limits in Paragraph 9(c) were extended by agreement of the parties, including extension of the due date for this decision to April 2, 2021.

>hereby extended for an additional twelve (12)-month period (i.e., until December 31, 2021) pursuant to Section 2(a) of the Schedule of your Employment Agreement....

Article 26 of the Collective Bargaining Agreement (CBA) addresses "Notices," and provides:

>Section 26.2.  Except as addressed elsewhere by this CBA, any and all notices given or required to be given pursuant to this CBA shall be sent by personal delivery, overnight courier (e.g., UPS or FedEx) or by e-mail as set forth below.  Proof of e-mail must be available through a confirmation of receipt (either via e-mail or telephone).  Option notices must be sent to the applicable Player, or his authorized representative, as set forth in the Player's SPA, or as set forth in a signed form provided to MLS, and may also be sent by certified mail (return receipt requested).  Notices shall be deemed to have been received on the date such notice is delivered to the address stated below (or such other address as may be specified in writing by the parties hereto) or, in the case of certified mail, on the fifth (5th) business day following the date on which it was mailed:
>
>If to MLS, at:
>
>>Major League Soccer
>>Attn: Todd Durbin
>>Todd.durbin@MLSoccer.com
>>420 Fifth Avenue – 7th floor
>>New York, New York 10018
>>Fax:  (212) ... __AND__
>
>>Attn: William Ordower

3                                  Kaku/MLS

       \* \* \*
          **AND**

  Proskauer Rose LLP
  Attn: Howard Robbins
       \* \* \*

If to the Union at:

  MLS Players Union
  Attn: Bob Foose
  bfoose@mlsplayers.org
  7700 Old Georgetown Rd, Suite 730
  Bethesda, JD 20814
  Fax:  (301) ... **AND**

  Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
  Attn: Jon Newman
       \* \* \*

If to the Player, at the address set forth under his name, or the name of his agent or lawyer, as set forth in the Player's SPA or in a signed form provided to MLS.  Absent a signed designation by the Player, notices to the Player will be sent to the Player, at his last known address, and the Union.

After signing with MLS, Kaku was assigned to the New York Red Bulls team.

MLS contends that its option notice was hand delivered to Kaku by Red Bulls Sporting Director Dennis Hamlett on March 3, 2020 and also timely sent by email to his authorized representative, Scott Pearson, who subsequently confirmed receipt.  MLS seeks a remedy as provided in Paragraph 9(c)(vi) of Kaku's SPA, which provides:

> If the Impartial Arbitrator finds that the Player has breached this Agreement, the Impartial Arbitrator shall order that the Player not play, attempt to play or threaten to play soccer for any team other than a Team in the League.

The Major League Soccer Players Association (Players Association) denies that the option notice was delivered by Hamlett to Kaku and contends that, even if it was, the delivery did not comply with the requirements of Article 26.2 and was invalid. The Players Association does not dispute that the option letter was sent by email to Scott Pearson, but insists that Pearson was not Kaku's authorized representative for purposes of Article 26.2.

Because of the expedited nature of this proceeding, only a limited recital of the facts and arguments presented by the parties is included in this decision. The critical findings supporting the award are set forth below.

### FINDINGS

MLS decided to issue its option notice to Kaku in February 2020, rather than waiting until closer to the December 1 deadline, because of concerns that Kaku might seek to challenge the validity of a unilateral option exercise. These concerns were based on earlier communications from Pearson, who purported to be Kaku's agent, to Red Bulls management. MLS prepared the option notice, which is dated February 19, 2020,

and marked it "VIA HAND DELIVERY".  This was unusual, but not unique.  The vast majority of option notices in recent years evidently were sent to players by email, but some were hand delivered.  MLS and the Red Bulls -- who had decided they wanted the option to be exercised -- planned to have Red Bulls Sporting Director Hamlett personally hand the option notice to Kaku after first providing a copy by email to Pearson, who they had reason to assume -- based on prior and continuing interactions and social media/internet postings -- represented Kaku.  They recognized that the exercise of the option was likely to be a sensitive issue, particularly since there also were ongoing discussions about renewal or transfer of Kaku's contract.

Hamlett emailed the option notice to Pearson on February 28, 2020 with a request that he share it with Kaku and confirm that Kaku had received it.  Notwithstanding that request, the evidence shows that MLS and the team intended that the option notice also would be hand delivered to Kaku, as plainly indicated on the February 19 option notice prepared by MLS which was sent to Pearson.  Hamlett explained why he waited until March 3 to hand deliver the option notice to Kaku: "...we had opening game on March 1.  ...I try not to bother the players the day before and the day of games....  [the] 2nd was a day off...." (3/3 Tr. 89.)  Hamlett credibly testified that following a team video session they both attended on March 3, he hand delivered the option notice to Kaku in Hamlett's office at the Red Bulls facility, explaining to him -- in Spanish -- what it was.  There is no reason to believe that Kaku did not

6                                        Kaku/MLS

understand what he was being given and the significance of the option notice.

Kaku flatly denies that he even met with Hamlett in the latter's office on March 3, 2020, let alone that Hamlett handed him the option notice.  Kaku insists that Hamlett lied about this in his testimony.  Based on the total record before me, I find Kaku's denial not credible, and credit Hamlett's testimony.

Article 26.2 allows notices, including option notices, to be "sent by" "personal delivery", among other methods.  The CBA does not require a confirmation of receipt of notice sent by personal delivery, as it does for notice sent by email.[2]  The Players Association argues that Article 26.2 only provides for personal delivery to a Player's address, in this case Kaku's last known address, and does not permit hand delivery at any other location, including a team facility.  Such a restriction on personal delivery, as contrasted with delivery utilizing a third party such as overnight courier or certified mail, is not a persuasive reading of Article 26.2.[3]  Moreover, there is no

---

[2] Obtaining confirmation of receipt, while not required, might help to avoid disputes about whether personal delivery of an option notice occurred.  But it should be noted that this evidently was the first time such a dispute has arisen.

[3] Notably, proof of delivery in this instance is based on credible direct testimony of actual hand delivery, not on a presumption of delivery.

7                                          Kaku/MLS

evidence that in prior instances personal delivery of notices by hand has been confined to a Player's home address.[4]

The evident purpose of Article 26.2 is to ensure actual and timely delivery of required notices to the designated recipient.[5]  In the case of notice to a Player, I do not read this provision to require that notices sent by personal delivery -- in particular, hand delivery by an MLS or team official, as occurred in this case – must be delivered to the Player only at his last known address.  As MLS asserts, the plain definition of "personal delivery" means into the Player's hands.  The evidence, in my judgment, shows that is what occurred here.

---

[4] MLS disciplinary notices -- several of which are included in the record -- are prepared by MLS and sent to a "Team Administrator" to deliver to the Player.  Such notices are covered by Article 26.  (See Section 26.1.)  As the Players Association points out, the Player is asked to sign a disciplinary notice to confirm receipt.  As previously indicated, such confirmation may serve a useful purpose, although it is not required by the CBA.  But the point to be made here is that there is no evidence, and it appears highly unlikely, that the Team Administrator goes to the Player's last known address to personally deliver such notices, as would be required under the interpretation of Article 26.2 asserted by the Players Association in this case.

[5] The Players Association maintains that it proposed the language in question in order to limit physical delivery of notices to a Player at his home address so as to avoid delivery in the "locker room" where it might be mislaid or disregarded.  There is no evidence or claim that it conveyed that understanding to MLS during negotiation of the CBA.

Accordingly, it is unnecessary in this case to determine whether email delivery of the option notice to Scott Pearson satisfied the notice requirements of Article 26.2.

For the reasons set forth above, I find that Kaku has breached his SPA with MLS by signing with and playing for a team outside MLS in 2021, because MLS effectively exercised its option to extend his contract through December 31, 2021.

## AWARD

Alejandro Romero Gamarra (a/k/a "Kaku") breached his Player Agreement with Major League Soccer as set forth in the above Findings. The Player is ordered to not play, attempt to play or threaten to play soccer for any team other than a Team in Major League Soccer, as provided in Paragraph 9(c)(vi) of his Player Agreement.

_____
Shyam Das, Arbitrator

Dated:  April 2, 2021